**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re: U LOCK INC.                                    Bankruptcy No.: 22-20823-GLT

             **Debtor,**

                                                      **Chapter 7**

_____

**SHANNI SNYDER, as assignee of Robert Slone,
Chapter 7 Trustee for U Lock Inc.,**

      **Plaintiff,**

**v.**                                                **Adv. Proc. No.:  23-2020-GLT**

**CHRISTINE BIROS, and the
BIROS IRREVOCABLE LIFE INSURANCE
TRUST,**

      **Defendants.**

<u>AMENDED ADVERSARY COMPLAINT</u>

AND NOW, comes Shanni Snyder, as assignee of Robert Slone, Chapter 7 Trustee for U Lock, Inc., by and through her undersigned counsel, and submits the within Adversary Complaint, and in support thereof, states as follows:

<u>Parties</u>

1.      The Plaintiff is Shanni Snyder ("Snyder"), an adult individual with an address of 14390 US Rt. 30, North Huntington, Pennsylvania, 15642.

2.       Defendant Christine Biros ("Biros"), an adult individual with an address of 435 Millers Lane, Plum Boro, Pennsylvania, 15239.

3.      Defendant Biros Irrevocable Life Insurance Trust ("Trust") is a trust with an address of 3001 Jacks Run Road, White Oak, PA 15131.

4.      Collectively Biros and the Trust will be referred to as "Defendants."

1

## **Jurisdiction and Venue**

5.      On April 27, 2022, the Plaintiff filed an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against U Lock, Inc., in the United States Bankruptcy Court for the Western District of Pennsylvania.  The Court ultimately granted the involuntary petition and entered the Order for Relief under Chapter 7 (Doc. No. 42).

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

7.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (2)(A), (F), (H), (K), (N) and (O).

9.      The Plaintiff consents to the jurisdiction of this Honorable Court and the entry of a final order by the Court.

10.     The Plaintiff purchased these claims from the Chapter 7 Trustee pursuant to an Order of Court dated December 20, 2022 and, as such, sues in her capacity as assignee of the Trustee.

## **Facts**

11.     The claims herein involve a property located at 14140 Route 30, North Huntingdon, Pennsylvania (the "Property").

12.     The Property is a commercial property that currently has storage units in place.

13.     During the Third Quarter of 2014, John Biros and Christine Biros (the "Biros Parties"), George Snyder and Kash Snyder (the "Snyder Parties"), as well as others, discussed forming an entity to purchase the Property.

14.     John Biros and George Snyder had maintained an extremely close friendship.  The Biros Parties and the Snyder Parties knew each other and conducted business since high school in the late 1980s.

15.     The Biros and Snyder Parties believed that the Property could be acquired at a favorable price and be further developed to substantially increase its value.

16.     Based on information and testimony from George and Kash Snyder, prior to the purchase, various conversations took place between the Biros family and the Snyder party relating to how to buy the property.

17.     The Property was owned by several Estates at the time U Lock sought to purchase it.

18.     In or around late November 2014, Erik Martin executed an agreement as "ERIK MARTIN, as incorporator for U Lock Inc." to purchase the property for $325,000. $20,000 was paid around that time as a deposit toward the purchase.  ***See* Exhibit 1**.

19.     A closing was set up, but U Lock did not show.  Henry Moore, one of the Seller Estates' co-administrators explained, "We originally had a -- a $20,000 deposit was made by the incorporator of U Lock. I believe it was Eric Martin. We had a closing set up at the Westmoreland County Bar Association. On the day of closing, Mr. DelCotto and I appeared. No one from U Lock appeared. So, we sat for there about an hour and then we left. At that point in time, I instructed Mr. Del Cotto [the other Estate administrator] that the deal must have fallen through. No one from U Lock bothered to tell us why they didn't

3

come. At that point Mr. DelCotto subsequently thereto got a hold of someone from U Lock. The only way the deal was resurrected would be I demanded another $10,000 deposit money. So twenty thousand became thirty thousand, and the settlement date was set again for July 16th [2015]." *See Exhibit 2, Excerpts from Transcript from Non -Jury , page 22.*[1]

20.     On July 15, 2015, the day before the new closing, the Snyder parties, with the knowledge of the Biros parties, had Samantha McKee use the Pennsylvania Secretary of State's PENNFile system to electronically file Articles of Incorporation for U Lock.

21.     On July 16, 2015, Biros acquired four Cashier's Checks totaling $309,213.30 to loan U Lock for the purchase of the Property. Christine Biros made the loan for her brother, John.  Ms. Biros explained:

> Q.  Ms. Biros, how did you wind up paying approximately $309,000 to the estate?
>
> A.  My brother asked me to do that. I did it for him.
>
> Q. Would you have loaned money to U Lock on your own?
>
> A. No.
>
> Q. Was it for an investment?
>
> A. Not for me, no.

*See Exhibit 2,  Excerpts from Transcript from Non -Jury, page 29*.

22.     Christine Biros subsequently testified, "Before going into the closing, I asked for some sort of guarantee that I would get my money paid back to me from them, being

---

[1] The quoted portions of the transcript omit extraneous materials, including objections.

U Lock, Snyder's, whoever. I wanted to make sure that I was getting paid back." ***See***

***Exhibit 2, Page 30.***

23.     Kash Snyder testified that Ms. Biros and her brother dictated the terms and

had him write it out:

> Q.  So you wrote this out?
>
> A. I took it -- I dictated -- I'm sorry. I took it from dictation. It was the three of
>
> us,  John, Christine and I in her vehicle. They handed me paper, dictated,
>
> and I wrote it and I signed it.
>
> Q. So it's not your language?
>
> A. Correct.
>
> Q. Who dictated it?
>
> A.  I can't recall. I would think it's mostly John, but it was probably --  it may
>
> have been the both of them. But I can't be sure.

***See Exhibit 2, Page 71.***

24.     The terms of the loan, executed by Kash Snyder, and dictated by the Biros

Parties, stated, "This loan agreement between U Lock Inc. (borrower) A Pennsylvania

corporation and Christine Biros (lendor) and/or guarantor collateralized from S&T Bank

for the sum of $325,316.00.  The terms + conditions of the payment will be agreed upon

on or before 8/16/15.  Lender will set terms if agreement is not settled by that date.  /s/

Kash Snyder, Director, U Lock Inc.  7/16/2015."  See **Exhibit 3.**

25.     At the time of the execution of the loan, U Lock was insolvent, had no bank

account, no money, and relied substantially upon the Biros parties for its future.

26.     The Biros parties knew this.   They knew of George Snyder's personal situation, his financial condition, and the fact that the Snyder Parties were reliant on the Biros Parties to provide money for the property and to develop or service it.

27.     At the state court trial, George Snyder explained:

> A. I thought we were still in a partnership agreement. I still continued to meet with them several times a week. Every Wednesday -- sometimes John and I almost daily. We would get together and get lunch or go to the property or I would go see them at their bar. I would ask -- you know, they didn't want repaid. It was a partner. At one time Christine asked if I could repay it. I said I can get the money. I could give you your money back. She replies -- and I said so John wants out of the partnership? She said, no, you should be out of it. I said, well, if I buy you out or pay the amount, then he would no longer be a partner. She said, well, wait a minute. We might still be partners. Let me talk to John. They went back and forth for almost two years. That was the first demand. That second letter you put in was in 2017, was the first time they asked for a payment. So up until then, we were behaving like partners.

> Q. On the day of closing, where did the money come from?

> A. Christine loaned it to me.

> Q. And she had you sign the agreement?

> A. For U Lock.

*See Exhibit 2, Page 46.*

28.     Christine Biros also made it clear that it was a loan.   She explained:

> Q. And that's why you filed this lawsuit because you wanted to get paid back?

> A. Yes. But it says I will set the terms and agreement if not settled by that date. That was their agreement with me.

> Q. I understand that. You weren't paid back and you were dissatisfied with that and that's why you are in the courtroom today; correct?

> A. Correct. I prefer to have the cash. Do you have it?

> Q. So you treated it as a loan the entire time; is that correct?

> A. Yes.

> Q. And you went to a closing; is that correct?

A. Yes.

Q. And you supplied some funds at that closing; is that right?

A. Yes.

Q. And did you see the documents that were being exchanged at that closing?

A. No.

Q. You didn't see any of them?

A. I only saw my checks and that. I didn't see -- I saw Kash Snyder signing documents. That's all I saw.

Q. Were you familiar with why they were at a closing? Were they getting land? Is that what they were doing?

A. They were purchasing property.

Q. And you knew they were purchasing property?

A. Yes.

Q. And since Mr. Snyder was the one signing the papers, the property was going to Mr. Snyder you assumed? I assume you assumed that.

A. I didn't assume anything at that point. I didn't know who the property was going to.

Q. But you knew the property was not going to you? You didn't sign any papers that day in order for the property to go to you?

A.  That's correct.

***See Exhibit 2, Page 32-36***

29.     At the closing, Martin assigned the purchase agreement to Kash Snyder and directed the sellers to "execute all deeds to convey the subject property to U Lock Inc."  *See* **Exhibit 4**.

30.     The sellers issued a Settlement Statement to U Lock Inc.  *See* **Exhibit 5**.

31.     On July 17, 2015, the Pennsylvania Secretary of State sent a letter rejecting U Lock's articles of incorporation because of a problem with the docketing statement, not because of any issue with the Articles of Incorporation.  *See* **Exhibit 6**.

32.     When Biros was asked whether she had come to an agreement on the terms of her loan to U Lock before August 16th, 2015,  Biros stated, "No."  ***See Exhibit 2, Page 30.***

33.     On September 4, 2015, the Secretary of State accepted the Articles of Incorporation on behalf of U Lock Inc.

34.     Sometime in late 2015 or early 2016, John Biros provided U Lock with a GMC truck to use as a company vehicle.

35.     Furthermore, Ms. Biros infused additional money into U Lock.  She testified as follows:

Q. Did you advance any further sums to them?

A. Five thousand dollars.

Q. Why would you do that?

A. To pay the taxes is what I was told on the property."

***See Exhibit 2, Page 31.***

36.     On April 4, 2017, U Lock recorded *one* of *four* 2015 deeds with the Westmoreland County Recorder of Deeds.  U Lock paid the transfer tax associated with the recording of the Deed.

37.     On May 5, 2017, Christine Biros sent an unsigned letter to George to "document a loan" for the purchase of real estate.  Ms. Biros demanded an interest rate of nine percent, stating $60,939.85 is "to be added to the proceeds," conditioned on

George, Kash, and Erik Martin guaranteeing it, executing a note, mortgage, and assignment of leases and rents. Biros changed the face amount of the loan to $385,939 plus additional advances including her "legal fees" and any other charges she may incur. She stated that the loan would be at 9% interest, with monthly payments of "principal and interest" based on an "amortization of ten (10) years, with a balloon payment of the outstanding balance of the loan due on or before June 1, 2022." *See* **Exhibit 8**.

38.     At the time of the demand setting the terms of the loan, the Biros parties were aware that U Lock had very little assets and revenue and no means to pay its creditors or operate functionally.

39.     In late September or early October 2017, members of the Biros family brought two mobile homes which they owned to the U Lock property and stored them there.  They did not pay U Lock for the storage for the trailers.

40.     In October 2017, Biros filed suit against U Lock Inc., "a Pennsylvania corporation," and the Estates before the Court of Common Pleas of Westmoreland County Pennsylvania.  *See* **Exhibit 9**.

41.     On February 13, 2018, deeds conveying the property to U Lock, Inc., were tendered and were recorded on or about March 1, 2018, with the Westmoreland County Recorder of Deeds, at instrument numbers 201803010006263, 201803010006264, 201803010006265, and 201803010006267.

42.     Immediately prior to trial on April 29, 2019, Christine Biros and the Estates announced a settlement where the Estates would be dropped from the case in exchange for $10,000 towards taxes on the property and placing blank deeds into the court registry.

43.     Specifically, the Estates offered, "At this time, all four estates are willing to issue an executor deed, a fiduciary deed, up through the date of the original closing July 16th, 2015, in the name of Christine Biros in an offer to implead them into the court so that whatever party prevails, the deeds are available for recordation after you render verdict." ***See Exhibit 2, Page 4.***

44.     However, Christine Biros objected to the backdating of the deeds.  Her counsel stated, "Your Honor, the only objection my client might have with that is not related to the motion that the estates have made, but specifically to the deeds, the date of the deeds. Since my client has had no possession or access to the property, the issue of back taxes and liability related to the property is at issue. Fundamentally, my client is not opposed to letting the estates out of the case provided they deliver the deeds with blank dates that the Court could then in its verdict establish." ***See Exhibit 2, Page 5***

45.     The Court then stated, "At this time, I am going to grant the motion. With regard to Denise Schur, Executrix of the Estate of Alex Schur; Henry L. Moore and Susan Stano, Co-Executors of the Estate of Nicholas Schur; Kathleen S. Walter, Executor of the Estate of Michael Schur; Cynthia Sarris, Administrator of the Estate of Ann Sarris are hereby granted relief and removed from the caption and out of the case with the requirement that deeds be impleaded and delivered to the Court no later than May the 13th of 2019 in such a fashion that their interest is removed, and the deeds will be made blank as to how they will be executed for the purposes of the parties by determination of the Court at the conclusion of said trial." ***See Exhibit 2, Page 8-9.***

46.     Despite the state court's admonishment that the deeds were not to be dated and were to be "made blank," the Estates delivered to the Court for escrow four deeds

with four different dates on them. The deed subsequently recorded at 2022012500003084 is dated May 9, 2019. The deed subsequently recorded at 202201250003085 is dated May 13, 2019. The deed subsequently recorded at 202201250003086 is dated May 2, 2019. The deed subsequently recorded at 202201250003086 is dated May 3, 2019.

47.    Based on information and belief, these deeds were not provided to U Lock prior to escrow and were not made public until filing.

48.    No compliance with the verbal Order occurred that the deeds would be submitted without a date and without specific terms.

49.    Ultimately, on August 23, 2019, the Westmoreland County Court of Common Pleas entered an Order regarding the Property. A true and correct copy of the Order is attached hereto as **Exhibit 10.**

50.    In large part, the Court determined that Biros was the source of funds for the purchase of the Property, that at the time of the purchase of the Property U Lock, Inc. was not a valid entity with the Commonwealth of Pennsylvania, but that the 2018 deeds did convey ownership to U Lock, Inc., that U Lock, Inc.,  because of solvency issues, had no ability to repay Biros and that the imposition of a Trust in her favor would prevent an unjust enrichment to U Lock, Inc.

51.    On January 10, 2020, Ms. Biros filed a Motion to Require U Lock to Post Security Pursuant to Pa.R.A.P. Rule 1733. *See* **Exhibit 11.**

52.    In this document, Biros admits the debtor-creditor relationship and that the money constituted a loan.

53.    On March 23, 2020, Biros filed a Motion to Deliver Deeds. *See* **Exhibit 12**.

54.     On May 7, 2020, the Court of Common Pleas denied the motion to deliver deeds without prejudice.  *See* **Exhibit 13**.

55.     Based on information and belief, the Court of Common Pleas orally denied the motion for U Lock to post security and/or simply did not require security.

56.     The Superior Court of Pennsylvania affirmed in 2021. *Biros v. U Lock Inc.,* 2021 Pa. Super. 104, 255 A.3d 489 (Pa. Super. Ct. 2021).  In their decision, the Superior Court held:  "[T]he trial court accepted the legitimacy of the 2018 Deeds: 'Even accounting for the *void ab initio* status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 […].'"

57.     In addition, the Superior Court explained that the transfer of property constituted a creditor remedy:   "[T]he record supports the following conclusions: 1) Appellee paid for the Property on behalf of Appellant; 2) Appellee expected repayment from Appellant; 3) Appellant never repaid Appellee; 4) Appellee had no adequate remedy at law because Appellant lacked resources, other than the Property, with which to compensate Appellee. There was no dispute that Appellee was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to Appellee or entering judgment for Appellant and trusting that the conclusion of this litigation would result in an influx of cash to Appellant with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder."  A copy of the decision is attached hereto as **Exhibit 14**.

58.     U Lock petitioned the Supreme Court of Pennsylvania for leave to appeal. The Supreme Court denied the petition on January 19, 2022.  *Biros v. U Lock Inc.*, 259 WAL 2021.  *See* **Exhibit 15**.

59.     The denial of leave to appeal did not end the jurisdiction of the appellate courts in Pennsylvania or the stay of lower court proceedings pursuant to P.R.A.P. 1701(a).  On the contrary, the Pennsylvania Supreme Court does not remand the case until certain time periods expire.  P.R.A.P. 2572(a)(ii).

60.     Prior to the remand of the case pursuant to Pennsylvania Rule of Appellate Procedure 2572(a)(ii), on January 20, 2022, the paralegal for counsel for Ms. Biros called the law clerk for the state court judge telephonically and advised that the Supreme Court of Pennsylvania denied leave to appeal and asked the procedure to obtain the deeds. The law clerk advised to submit an Order.  On the same day, counsel prepared and submitted an Order and the state court judge signed it.  The Order was not served on any party and provided directly to counsel for Ms. Biros.

61.     Unbeknownst to counsel for U Lock that the Order existed, on February 2, 2022, U Lock requested the Pennsylvania Supreme Court stay the remand until the time to petition the Supreme Court of the United States expired.  P.R.A.P. 2572(c).

62.     The Supreme Court of Pennsylvania stayed the remand, but as stated above, the state court judge had already issued the Order without the knowledge of U Lock's counsel.

63. On March 17, 2022, after U Lock learned of the existence of the Order it filed a Motion to Strike the January 20, 2022, Order.

64.    On March 18, 2022, the Pennsylvania Supreme Court lodged the stay of the remand on the docket of the state court record.  ***See Exhibit 16.***

65.    On May 12, 2022, Shanni Snyder personally notified the state court judge of this bankruptcy proceeding and the stay.

66.    May 13, 2022, the judge issued an Order denying the motion to strike filed by U Lock.

67.    On May 23, 2022, U Lock filed two notices of appeal to preserve its rights as to the January 20, 2022, and the May 13, 2022, Orders to the Superior Court of Pennsylvania.

68.    Those two appeals remain pending at docket numbers 615 WDA 2022 and 617 WDA 2022 respectively.  In addition, the Supreme Court never remanded the record to the Court of Common Pleas from its decision. Rather, it noted the bankruptcy and stayed the case.

69.    The Superior Court also never remanded the record and its docket shows as active considering the Supreme Court's stay of the remand.

70.    Considering the procedural posture of the Supreme Court stay of the remand, and the pending appeals, Plaintiff is unsure whether the Court of Common Pleas had jurisdiction to release the deeds on January 20, 2022, or whether Ms. Biros had a right to file them on January 25, 2022.

71.    Before and throughout the state court litigation (from 2015 through 2019) the Biros Parties and the Snyder Parties continued to discuss the development of the Property and acted in a manner that demonstrated the participation in or partial control of

U Lock, Inc.  This included weekly meetings with Biros as well as near daily meetings between the Snyder Parties and John Biros even during the trial.

72.    As it was at its inception, throughout the period from 2015 to 2022, and upon the transfer of the Property to Biros, the Debtor was insolvent.

73.    Upon the transfer of the divestiture of the property, the Debtor was left with only negligible assets.

74.    At no time did the Biros parties pay for the storage of the mobile homes on the U Lock property, demonstrating their control over entity.

75.    In or around 2020 or 2021, John Biros had U Lock return the company vehicle he loaned for it to use.

76.    Further, the value of the Property is believed to be substantially greater than any amount owed to Biros.  Through Ms. Biros' own admissions the property is valued between $700,000 and $900,000.

77.    On January 25, 2022, Biros recorded deeds for the Property in her name. The Deeds are recorded at Instrument Numbers 202201250003084, 202201250003085, 202201250003086, and 202201250003087.

78.    On or about February 11, 2022, the Trust was granted a mortgage on the Property.  The reason for the granting of the mortgage is unclear and the Plaintiff believes, and therefore avers, that it was placed on the Property to cloud title.  The mortgage was recorded with the Westmoreland County Recorder of Deeds at Instrument 202202110005448.

79.    During the two separate creditors meetings in this case, both George Snyder and Kash Snyder provided testimony about the weekly board meetings.  In

addition, they claimed under oath that they did not file any taxes because, up to 2018, the
Biros parties instructed them to hold off because of an investigation.

80.    The promissory note allowing the Biros parties to set the terms, the
demanded terms of the loans made two years after the fact, the reliance on the Biros
parties for assistance and funding, the weekly meetings with the Biros parties, the
placement of a trailer on the land from 2017 through the bankruptcy without payment,
instructions as to when to file taxes, and providing the enterprise with a truck for use from
2015 through 2020 render Ms. Biros and her family as one who has a sufficiently close
relationship with the Debtor that her conduct is subject to closer scrutiny as opposed to
those dealing with the Debtor at arm's length.

81.    Biros is an insider of the Debtor as (1) she acted as a director the enterprise;
(2) she acted as an officer of the enterprise; (3) she acted as a person in control of the
enterprise; (4) she is a close relative of officers, directors and persons in control or who
exerted control of the enterprise.

82.    Furthermore, for similar reasons, the Defendant Trust herein is an insider
of the Debtor.  Additionally, based on information and belief, the Biros Irrevocable Life
Insurance Trust is a vehicle created by members of the Biros family to hold certain
assets.

83.    As such, it would also be an insider to the extent that the beneficiaries or
control of the Trust are relatives of Christine Biros.  Further, it is believed that Biros is or
has acted as Trustee of the Trust.

84.    By virtue of the transfer of the Property and the granting of a subsequent
mortgage, the Defendant's received more than they would have received had the transfer

not occurred and the Estate been liquidated pursuant to Chapter 7 of the Bankruptcy Code.

85.     Furthermore, the transfer was for less than reasonably equivalent value.

## COUNT I- PREFERENCE PURSUANT TO 11 U.S.C. §547

86.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

87.     Biros received property of the Debtor in the form of a Deed recorded on or about January 25, 2022.

88.     The Trust received Property in the form of a Mortgage subsequently granted on the Property.

89.     As set forth above, the Defendants are insiders of the Debtor.

90.     The transfer of the Property and the granting of a Mortgage constitute transfers of property of the Debtor to a creditor and/or insider of the Debtor.

91.     The transfer of property was made for or on the account of an antecedent debt.

92.     By virtue of the transfer of the Property and the granting of the mortgage, the Defendants received more than they would have received had the transfer not occurred and the estate been liquidated pursuant to Chapter 7 of the Bankruptcy Code.

93.     As such, the payments constitute avoidable preferences pursuant to Section 547 of the Bankruptcy Code.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court

deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT II- PREFERENCE PURSUANT TO 11 U.S.C. §550

94.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

95.     The Defendants were initial transferees of the property or the immediate or mediate transferees of such initial transferee of the Property.

96.     As such, the Plaintiff is permitted to recover the transfer from the Defendants in accordance with 11 U.S.C. §550(a).

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT III- FRAUDLENT TRANSFER PURSUANT TO 11 U.S.C. §548(a)(1)(A)

97.     The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

98.     The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

99.     The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

100.   The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

101.   The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT IV- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C 548 (a)(1)(B)

102.   The Plaintiff incorporates the preceding paragraphs by reference as if set forth at length herein.

103.   The transfer of the property and placement of the mortgage on the property were for the benefit of the Defendants and within two (2) years of the Petition Date.

104.   The transfers were made directly to the Defendants and benefited the Defendants as they received a valuable asset that was or should have been owned by the Debtor.

105.   The transfers were made with the actual intent to hinder, delay or defraud the Plaintiff and the creditors of the Debtor who were owed money by the Debtor.

106.   The transfers were to the actual detriment of the Debtor's creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5104

107.    The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

108.    The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

109.    The transfer of the Property was the transfer of an interest of the Debtor in the Property.

110.    The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

111.    At the time of the Transfer, there existed creditors holdings claims (both secured and unsecured) against the Debtor.

112.    Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

113.    The transfer was done to hinder, delay or otherwise defraud or cause creditors of the Debtor to not receive payment on their claims.

114.    The transfer was made without the Debtor receiving reasonably equivalent while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT V- FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §544(b) AND 12 PA C.S. §5105

115.   The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

116.   The transfer of the Property was made by the Debtor benefited the Defendants within four (4) years of the Petition Date.

117.   The transfer of the Property was the transfer of an interest of the Debtor in the Property.

118.   The transfer was made for the direct benefit of the Defendants who each obtained interests in the Property to the detriment of the Debtor's creditors.

119.   At the time of the transfer, there existed creditors holding claims (both secured and unsecured) against the Debtor.

120.   At the time of the transfer, or as a result thereof, the Debtor was or was rendered insolvent and unable to pay its outstanding obligations.

121.   Despite its debts to various creditors, the transfer was made for the benefit of the Defendants and the Debtor received no value for the Transfer.

122.   The transfer was made without the Debtor receiving reasonably equivalent and/or for less than fair consideration, while at the same time leaving virtually no meaningful assets available for the Debtor and rendering the Debtor unable to pay its creditors.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

## COUNT VI- RECOVERY OF AVOIDED TRANSFER PURSUANT TO 11 U.S.C. §550

123.    The Plaintiff incorporates the previous paragraphs by reference as if set forth at length herein.

124.    To the extent that the transfer of the Property is avoided, the Plaintiff is entitled to recover the transferred Property or the value thereof from the Defendants.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered in her favor against the Defendants, together with costs of suit and all other relief this Court deems fair and just under the circumstances, including, but not limiting to the recovery of the Property and the striking of the Mortgage.

Respectfully Submitted,


Date: April 19, 2023                           /s/ David L. Fuchs
                                               DAVID L. FUCHS
                                               PA I.D. #205694
                                               Fuchs Law Office, LLC
                                               554 Washington Ave, First Floor
                                               Carnegie, PA  15106
                                               (412) 223-5404 (phone)
                                               (412) 223-5406 (facsimile)
                                               dfuchs@fuchslawoffice.com

                                               AND

                                               /s/ John P. Lacher
                                               JOHN P. LACHER
                                               PA I.D.#62297
                                               The Lynch Law Group
                                               501 Smith Drive, Suite 3
                                               Cranberry Township, PA 16066
                                               (724) 776-8000
                                               (724) 776-8001
                                               jlacher@lynchlaw-group.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re: U LOCK INC.                                    Bankruptcy No.: 22-20823-GLT

                 Debtor,

                                     Chapter 7

_____

**SHANNI SNYDER, as assignee of Robert Slone,
Chapter 7 Trustee for U Lock Inc.,**

       Plaintiff,

v.                                                    Adv. Proc. No.:  23-2020-GLT

**CHRISTINE BIROS, and the
BIROS IRREVOCABLE LIFE INSURANCE
TRUST,**

       Defendants.

<u>**CERTIFICATE OF SERVICE**</u>

      David L. Fuchs hereby certifies, that on the <u>19th day of April</u>, 2023, a true and

correct copy of the foregoing was served upon the following *(via electronic service):*

Office of the U.S. Trustee
970 Liberty Center
Bldg.1001 Liberty Avenue
Pittsburgh, PA 15222

Robert H. Slone, Trustee
223 South Maple Avenue
Greensburg, PA 15601

Mark A. Lindsay
Lara S. Martin
Bernstein-Burkley, P.C.
601 Grant Street, Floor 9
Pittsburgh, PA 15219
mlindsay@bernsteinlaw.com
lmartin@bernsteinlaw.com

Date: <u>April 19, 2023</u>　　　　　　　　　　　*/s/ David L. Fuchs*　　　　　
　　　　　　　　　　　　　　　　　　　　　　　DAVID L. FUCHS
　　　　　　　　　　　　　　　　　　　　　　　PA I.D. #205694
　　　　　　　　　　　　　　　　　　　　　　　Fuchs Law Office, LLC
　　　　　　　　　　　　　　　　　　　　　　　554 Washington Ave, First Floor
　　　　　　　　　　　　　　　　　　　　　　　Carnegie, PA  15106
　　　　　　　　　　　　　　　　　　　　　　　(412) 223-5404 (phone)
　　　　　　　　　　　　　　　　　　　　　　　(412) 223-5406 (facsimile)
　　　　　　　　　　　　　　　　　　　　　　　dfuchs@fuchslawoffice.com