FILED
7/21/23 3:28 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**U LOCK, INC.**,<br><br>*Debtor*. | Case No. 22-20823-GLT<br>Chapter 7 |
| **SHANNI SNYDER**, as assignee of Robert Slone, chapter 7 trustee of U LOCK, INC.,<br><br>*Plaintiff*,<br>v.<br><br>**CHRISTINE BIROS** and<br>**THE BIROS IRREVOCABLE**<br>**LIFE INSURANCE TRUST**,<br><br>*Defendants*. | Adv. Pro. No. 23-2020-GLT<br><br><br>Related to Dkt. Nos. 17, 22, 23, 28, 29 |

| | |
|---|---|
| David L. Fuchs, Esq.<br>Fuchs Law Office, LLC<br>Carnegie, PA<br><br>John P. Lacher, Esq.<br>The Lynch Law Group<br>Cranberry Township, PA<br>*Attorneys for the Plaintiff* | Mark A. Lindsay, Esq.<br>Lara S. Martin, Esq.<br>Bernstein-Burkley, P.C.<br>Pittsburgh, PA<br>*Attorneys for the Defendants* |

## MEMORANDUM OPINION

Debtor U Lock, Inc. is out of the picture, but its fight with Christine Biros over a junkyard in North Huntingdon ("Property") that she once helped it purchase is seemingly unending. After acquiring the estate's rights through an asset sale, petitioning creditor Shanni Snyder commenced this action hoping to recover the Property from Ms. Biros as a preference or

fraudulent transfer.[1] Ms. Biros seeks dismissal, asserting that this is yet another attempt to frustrate her control of the Property by collaterally attacking the final state court orders which gave it to her.[2] Ms. Snyder opposes dismissal.[3] Ultimately, because Ms. Biros did not receive her Property interests from U Lock, there were no avoidable "transfer[s] of an interest of the debtor" under the Bankruptcy Code.[4] Thus, for the reasons below, the Court will grant the *Motion to Dismiss* with prejudice.

I.   BACKGROUND

The unusually combative procedural history of U Lock's bankruptcy is largely irrelevant so the Court will eschew the topic entirely. For now, it is enough to know that Ms. Snyder filed an involuntary petition against U Lock so that this avoidance action could be brought against Ms. Biros. Then Ms. Snyder purchased the right to assert such claims herself from the chapter 7 trustee.

At this stage, the Court must accept all well-pleaded allegations as true,[5] recognizing, of course, that the salient facts are largely judicially established and a matter of record.[6] Indeed, this adversary proceeding essentially seeks to avoid a judgment of the Court of

---

[1]   *Amended Adversary Complaint* ("Complaint"), Dkt. No. 17.

[2]   *Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Motion to Dismiss"), Dkt. No. 22; see also *Brief in Support of Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Brief in Support"), Dkt. No. 23.

[3]   *Response to Motion to Dismiss Adversary Complaint* ("Response"), Dkt. No. 28; *Brief in Opposition to Motion to Dismiss Amended Adversary Complaint* ("Brief in Opposition"), Dkt No. 29.

[4]   See 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1). Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[5]   See Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940-41, 173 L. Ed. 2d 868 (2009).

[6]   The Court may consider documents the complaint incorporates by reference and matters of public record when deciding a motion to dismiss. See Kind Operations, Inc. v. Cadence Bank, N.A. (In re PA Co-Man,

Common Pleas of Westmoreland County ("Trial Court") that was later affirmed by the Superior Court of Pennsylvania. Because the Court finds that Ms. Snyder's avoidance theories are legally flawed rather than simply inadequately pled, the Court will prioritize the "major plot points" over an exhaustive recitation of allegations.

As the Court previously observed: "[t]he Property is essentially a junkyard on Route 30, littered with construction debris, scrap piles, tire mounds, collapsed trailers, and inoperable vehicles," and "contains . . . a rundown, single-story self-storage building."[7] In 2014, a group including Ms. Biros, and her brother John, and Ms. Snyder's brothers, George and Kash (together, the "Snyders"), discussed forming an entity to purchase the Property.[8] Ms. Snyder is not alleged to have been involved.[9] The idea was to acquire the Property and boost its value through commercial development.[10] To that end, the Snyders formed U Lock.[11] The *Complaint* identifies no one officially designated as U Lock's officers and directors other than the Snyders.[12] On July 16, 2015, the sellers executed deeds purporting to convey the Property to U Lock,[13] but, unbeknownst to anyone at that time, U Lock would not successfully incorporate until September.[14]

---

Inc.), 644 B.R. 553, 582 (Bankr. W.D. Pa. 2022) (citing Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n. 3 (8th Cir. 2012)).

[7] In re U Lock, Inc., No. 22-20823-GLT, 2023 WL 308210, at *1 (Bankr. W.D. Pa. Jan. 17, 2023). These are first-hand observations made after the Court conducted a site visit on the Property with the parties.

[8] *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 13-18.

[9] Without getting into the weeds on a separate issue, Ms. Snyder obtained a default judgment under the Fair Labor Standards Act on the basis that she was an unpaid employee of U Lock for a period after its formation. Ms. Biros' objection to Ms. Snyder's claim is the subject of forthcoming decision.

[10] *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 15.

[11] Id. at ¶ 20.

[12] Id. at ¶¶ 24, 79, 81.

[13] Id. at ¶¶ 29-30; *Exhibit 4*, Dkt. No. 17-4. The sellers were the executors of several estates. *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 17.

[14] Id. at ¶¶ 20, 31, 33; *Exhibit 6*, Dkt No. 17-6. Due to an initial filing insufficiency, the Secretary of State rejected U Lock's articles of incorporation on July 17, 2015, the day after the sale closed.

Ms. Biros provided the funds to purchase the Property.[15] Prior to closing, Kash Snyder, as U Lock's director, executed a hand-written loan agreement between U Lock and Ms. Biros for $325,316 with repayment terms to be determined later.[16] In fact, the loan agreement allowed Ms. Biros to unilaterally set the terms if she and U Lock did not agree to any within a month.[17] She ultimately did so in May 2017, demanding a 9% interest rate, a mortgage to secure the loan, and guarantees from the Snyders.[18] But U Lock never repaid any portion of the loan nor delivered the requested mortgage or guarantees.[19]

Despite big dreams, U Lock only ever used the Property as a self-storage site to generate minimal revenue.[20] The *Complaint* offers no insight into why it was not developed as planned. Ms. Snyder alleges that U Lock was never solvent and that everyone understood that the Snyders were financially reliant on the Biroses to "develop or service" the Property.[21] Allegedly, the Snyders viewed the Biroses as partners,[22] and they all met weekly, if not daily, to discuss their plans for the Property even after the outset of litigation.[23] As a result, Ms. Snyder contends that Ms. Biros was an "insider" based on her engagement with and alleged effective control of U Lock.[24] That said, these allegations are largely conclusory with little, if any, factual support.

---

[15]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 21.

[16]    Id. at ¶¶ 22-24, 27-28; *Exhibit 3*, Dkt. No. 17-3.

[17]    Id.

[18]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 32, 37; *Exhibit 8*, Dkt. No. 17-8.

[19]    See *Exhibit 10*, Dkt. No. 17-10 at 3.

[20]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 12, 38. While perhaps neither here nor there, the Court is under the impression that the self-storage operations on the Property pre-date U Lock.

[21]    Id. at ¶¶ 25-26, 38, 72-73.

[22]    Id. at ¶ 27.

[23]    Id. at ¶¶ 71, 80.

[24]    Id. at ¶¶ 34-35, 39, 71, 74, 80-83.

In any event, Ms. Biros sued U Lock and the Property sellers in the Trial Court in October 2017.[25] Seizing on U Lock's delayed incorporation, she asked that the 2015 deeds be declared *void ab initio* and the Property be conveyed to her as its equitable owner.[26] The sellers first provided so-called "corrective" deeds to U Lock in 2018 before escrowing blank deeds in 2019 to secure a release from the litigation.[27] The Trial Court held a bench trial in April 2019.[28]

In August 2019, the Trial Court entered a *Non-Jury Trial Opinion and Order of Count* ruling in Ms. Biros' favor.[29] First, it agreed that U Lock was neither a *de facto* nor *de jure* corporation at the time of the original conveyance, rendering the 2015 deeds *void ab initio*.[30] Acknowledging that the 2018 deeds transferred legal title, the Trial Court still concluded that "it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property."[31] It found that: (1) "[Ms.] Biros paid the full purchase price of the [P]roperty"; (2) "U Lock has not repaid any of the purchase price"; and (3) "the record reflects doubt as to U Lock's solvency and ability to repay . . . now or at any point subsequent."[32] As a result, the Trial Court held that "the only equitable solution is the imposition of a constructive trust, and the present

---

[25]    Id. at ¶ 40.

[26]    *Exhibit 9*, Dkt. No. 17-9 at 8-11.

[27]    *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 41-47.

[28]    Id. at ¶ 42.

[29]    *Exhibit 10*, Dkt. No. 17-10 at 9.

[30]    Id. at 6.

[31]    Id. at 6-7 ("Even accounting for the *void ab initio* status of the original deeds, the corrective deeds, filed March 1, 2018, show legal title in the Subject Property belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the property since July 16, 2015, and has collected rents from tenants since that time. It is undisputed by U Lock that Christine Biros paid the full purchase price of the property to the Defendant Estates, and that U Lock has not repaid any of the purchase price to Plaintiff Biros. As such, the present case is ripe for the imposition of a constructive trust, where it is clear it would be wholly inequitable for Defendant U Lock to retain the beneficial interest of the property.").

[32]    Id.

conveyance of the [] Property to [Ms.] Biros."[33] The accompanying order therefore states that "Plaintiff Christine Biros *is* the equitable owner of the Subject Property" and directs the execution of the appropriate deeds to her.[34] But the order only expressly invalidated the 2015 deeds and was silent about the 2018 deeds.[35]

Unable to obtain reconsideration, U Lock appealed the ruling to the Superior Court.[36] In May 2021, the Superior Court affirmed, holding:

> In summary, the record supports the following conclusions: 1) [Ms. Biros] paid for the Property on behalf of [U Lock]; 2) [Ms. Biros] expected repayment from [U Lock]; 3) [U Lock] never repaid [Ms. Biros]; 4) [Ms. Biros] had no adequate remedy at law because [U Lock lacked resources, other than the Property, with which to compensate [Ms. Biros]. There was no dispute that [Ms. Biros] was entitled to repayment. Thus, the trial court faced a choice between imposing a constructive trust and awarding the Property to [Ms. Biros] or entering judgment for [U Lock] and trusting that the conclusion of this litigation would result in an influx of cash to [U Lock] with which it would, finally, repay its debt. The trial court chose the former, and we conclude that it acted well within the appropriate bounds for a court sitting as fact finder.[37]

In January 2022, the Supreme Court of Pennsylvania denied U Lock leave to further appeal.[38] It did, however, enter an order two months later staying the remand of the case to allow U Lock to petition the Supreme Court of the United States for review.[39]

---

[33]  Id. at 7.

[34]  Id. at 9 (emphasis added).

[35]  Id.

[36]  Biros v. U Lock Inc., 2021 PA Super 104, 255 A.3d 489, 493 (2021), reargument denied (July 28, 2021), appeal denied, 271 A.3d 875 (Pa. 2022).

[37]  Id. at 496; see *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 56-57.

[38]  Biros v. U Lock Inc., 271 A.3d 875 (Pa. 2022); see *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 58-59.

[39]  *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 62, 64; *Exhibit 16*, Dkt. No. 17-16 at 2.

Just days after leave to appeal was denied but before the stay, the 2019 deeds from the sellers were released to Ms. Biros and recorded in her name.[40] Notably, they declare that "all deeds of record dated on or after July 16, 2015 are hereby NULL AND VOID" based on the August 2019 opinion and order.[41] Soon after, Ms. Biros granted a mortgage on the Property to the Biros Irrevocable Life Insurance Trust ("Trust"), which was recorded with the Westmoreland County Recorder of Deeds.[42] U Lock subsequently filed appeals asserting the release of the deeds was premature and without proper notice.[43] These appeals were stayed by the chapter 7 order for relief entered on June 17, 2022.[44]

Ms. Snyder alleges that "[t]he value of the Property is believed to be substantially greater than any amount owed to Ms. Biros."[45] Her belief is based on "Ms. Biros' own admissions [that] the [P]roperty is valued between $700,000 and $900,000,"[46] apparently referencing an unfiled broker's price opinion from January-March 2023.[47] Ms. Snyder does not otherwise attempt

---

[40]  *Amended Adversary Complaint*, Dkt. No. 17 at ¶¶ 60, 70, 77.

[41]  *Exhibit G*, Dkt. No. 23-7 at 2, 17, 30, 44. It is unclear whether the Trial Court added, approved, or was even aware of the "null and void" language of the 2019 deeds.

[42]  *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 78.

[43]  Id. at ¶¶ 61-70. Notably, Ms Snyder indicates in her *Complaint* that she is "unsure" whether the stay of remand impacted the Trial Court's jurisdiction to release the deeds. Id. at ¶ 70.

[44]  *Order for Relief Under Chapter 7*, Case No. 22-20823-GLT, Dkt. No. 42.

[45]  *Amended Adversary Complaint*, Dkt. No. 17 at ¶ 76.

[46]  Id.

[47]  See, e.g., *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 345 at ¶ 33 (stating that Ms. Biros obtained a broker's price opinion indicating the current value of the Property).

to quantify Ms. Biros' claim, which, suffice it to say, has been the subject of lengthy proceedings.[48] Still, it is undisputed that U Lock had only negligible assets without the Property.[49]

Through the *Complaint*, Ms. Snyder argues that the transfers to Ms. Biros and the Trust are recoverable under section 550[50] either avoidable preferences under section 547,[51] actual fraudulent transfers under sections 548(a)(1)(A) and 544(b),[52] or constructive fraudulent transfers under sections 548(a)(1)(B) and 544(b).[53] Frankly, these theories depend on several dubious assumptions, most notably that "[Ms.] Biros received *property of the Debtor* in the form of a Deed recorded on or about January 25, 2022."[54] Patently absurd, however, is Ms. Snyder's bald assertion that Ms. Biros somehow received the Property "with actual intent to hinder, delay or defraud" U Lock's creditors.[55]

The *Motion to Dismiss* primarily challenges the allegation that Ms. Biros received a "transfer of *property of the Debtor*" as conflicting with final, non-appealable rulings and barred

---

[48] Ms. Biros filed three proofs of claim and a request for allowance of an administrative expense, all of which are the subject of contested motion to compromise. See Claims 2-2, 3-2, and 4-1; *Christine Biros' Amended Motion for Allowance and Payment of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(1) and/or Payment of Adequate Protection*, Case No. 22-20823-GLT, Dkt. No. 344; *Consent Motion to Approve Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 345; *Objection to Consent Motion to Approve Settlement Agreement Pursuant to Federal Rules of Bankruptcy Procedure*, Case No. 22-20823-GLT, Dkt. No. 352.

[49] *Amended Adversary Complaint*, Dkt. No. 17 at 73. The Court pauses to note the patent inconsistency of alleging that the Property's value far exceeded Ms. Biros' claim but that U Lock was *never* solvent without identifying other creditors. See id. at ¶ 72.

[50] Id. at ¶¶ 94-96, 123-124 ("Count II – Preference Pursuant to 11 U.S.C. § 550" and "Count VI [sic] – Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550").

[51] Id. at ¶¶ 86-93 ("Count I – Preference Pursuant to 11 U.S.C. § 547").

[52] Id. at ¶¶ 97-101, 107-114 ("Count III – Fraudlent [sic] Transfer Pursuant to 11 U.S.C. § 548(a)(1)(A)" and "Count V – Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and 12 Pa C.S. § 5104").

[53] Id. at ¶¶ 102-106, 115-122 ("Count IV – Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)" and "Count V [sic] – Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and 12 Pa C.S. § 5105").

[54] Id. at ¶ 87 (emphasis added).

[55] Id. at ¶¶ 100, 105, 113.

by preclusion doctrines.[56] In response, Ms. Snyder relies on the 2018 deeds to cast U Lock as the judicially recognized "legitimate owner of the Property" and posits that later deeds transferred that interest.[57] At the hearing on the *Motion to Dismiss*, the Court identified cases from this district holding that a constructive trust under Pennsylvania law is not a transfer of a debtor's interest.[58] Since neither party cited this seemingly dispositive authority, the Court allowed them to submit supplemental briefing.[59] The matter is now ripe for determination.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## III.    POSITIONS OF THE PARTIES

### A.    Ms. Biros

Ms. Biros argues that Ms. Snyder "continues to self-servingly ignore [] the fact that proper ownership of the Property was fully litigated, determined in favor of Biros, affirmed on appeal, and that no appellate rights remain available."[60] She emphasizes that U Lock never

---

[56] See *Motion to Dismiss*, Dkt. No. 22 at 2 (emphasis in original).

[57] *Brief in Opposition*, Dkt No. 29 at 10-11.

[58] See Melaragno v. CitiMortgage, Inc. (In re Sandman), No. 12-10339-TPA, 2013 WL 3991971, at *1 (Bankr. W.D. Pa. Aug. 1, 2013); Smithfield Tr. Co. v. Pitchford (In re Pitchford), 410 B.R. 416 (Bankr. W.D. Pa. 2009); Kedzuf v. Turetsky (In re Turetsky), 402 B.R. 663 (Bankr. W.D. Pa. 2009); Electric M & R, Inc. v. Aultman (In re Aultman), 223 B.R. 481 (Bankr. W.D. Pa. 1998).

[59] See *Supplement Brief in Support of Motion to Dismiss Amended Complaint Pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Supplement in Support"), Dkt. No. 33; *Supplemental Brief in Opposition to Motion to Dismiss Amended Adversary Complaint* ("Supplement in Opposition"), Dkt. No. 34.

[60] *Brief in Support*, Dkt. No. 23 at ¶ 27.

obtained a stay or posted a supersedeas bond,[61] and the remaining appeals concern "only . . . the timing and procedure for delivery of the Deeds"[62] As such, Ms. Biros asserts that any attempt to revisit those facts and issues is barred by res judicata and collateral estoppel.[63]

The main thrust of the *Motion to Dismiss* is that the *Complaint* wrongly assumes Ms. Biros received property interests from U Lock when her deeds were recorded in January 2022.[64] To the contrary, she argues the 2019 deeds conveyed legal title to her directly from the sellers and were effective upon delivery to the escrow in May 2019.[65] Ms. Biros also maintains that the express language of the 2019 deeds rendered U Lock's 2018 deeds "null and void."[66] Even so, she insists that the imposition of a constructive trust vested the Property's equitable title in her as of July 2015, meaning U Lock never owned the Property.[67] Although Ms. Biros did not initially articulate a basis for retroactively applying the constructive trust, she now relies on *In re Aultman* for this point.[68]

Even aside from its inability to identify a transfer of U Lock's interest in the Property, Ms. Biros contends that the *Complaint* is fatally defective for many other reasons. First, she notes that her interests precede the non-insider statutory look-back periods[69] and the *Complaint* only offers conclusory allegations to paint her as a director or officer of U Lock.[70] Next, Ms. Biros

---

[61]   Id. at ¶¶ 28-29.
[62]   Id. at ¶ 27.
[63]   Id. at ¶¶ 55-59.
[64]   Id. at ¶ 30.
[65]   Id. at ¶¶ 33, 63, 65, 76.
[66]   Id. at ¶ 64, 77.
[67]   Id.
[68]   *Supplement in Support*, Dkt. No. 33 at ¶ 5 (citing In re Aultman, 223 B.R. at 485-87).
[69]   *Brief in Support*, Dkt. No. 23 at ¶¶ 64, 77-78, 82, 87, 90, 93.
[70]   Id. at ¶¶ 35-42, 75.

10

asserts that there is no basis in fact for Ms. Snyder's claim that the Trial Court-ordered transfer of the Property was in anyway fraudulent.[71] Similarly, Ms. Biros avers that Ms. Snyder's allegations of U Lock receiving less than reasonably equivalent value for the Property are threadbare and lack any specificity.[72] Finally, she posits she could not have been unjustly enriched by any transfer since the Trial Court imposed the constructive trust to prevent U Lock's unjust enrichment.[73]

B.   Ms. Snyder

Ms. Snyder characterizes her action as "simple and straightforward," explaining that Ms. Biros was a creditor who obtained the Property in satisfaction of a debt of less than half its value.[74] She contends that her avoidance claims are distinct from the Trial Court proceedings and therefore, cannot be barred by either res judicata or collateral estoppel.[75]

The central premise on which Ms. Snyder constructed her avoidance theories is that the Superior Court recognized that "the trial court accepted the legitimacy of the 2018 Deeds."[76] Thus, she asserts "there has already been a determination that [U Lock] was the legitimate owner of the Property."[77] From there, Ms. Snyder concludes, though without elaboration, that the recording of the 2019 deeds resulted in a transfer of U Lock's property interests.[78] She does not acknowledge the details of the 2019 deeds (including the "null and void" language or the fact that the transferors were the sellers) but apparently assumes they were effective.

---

[71]   Id. at ¶¶ 81, 91.

[72]   Id. at ¶¶ 83, 85, 88.

[73]   Id. at ¶¶ 70-72.

[74]   Brief in Opposition, Dkt. No. 29 at 6.

[75]   Id. at 8-10.

[76]   Id. at 11 (quoting Biros v. U Lock Inc., 255 A.3d at 494).

[77]   Id.

[78]   Id.

Interestingly, Ms. Snyder downplays the independent significance of the constructive trust, reasoning that the 2019 deeds were necessary to effectuate it.[79] She first relied on *In re CRS Steam, Inc.*,[80] a decision applying Illinois law, for the proposition that "a constructive trust comes into being only when a court issues its order of transfer."[81] Following the Court's admonition to focus on Pennsylvania law, Ms. Snyder acknowledges that constructive trusts often "relate[] back to an earlier time" but asserts "there is no such requirement that it do so."[82] Stressing that equitable remedies are flexible, she argues that the Trial Court specifically ordered "the **present conveyance** of the Subject Property," thus defining the nature and timing of the remedy.[83] In other words, the constructive trust did not expressly relate back.[84] Ms. Snyder cites no case in which a constructive trust did not relate back, but notes the atypical absence of fraud or wrongdoing giving rise to the remedy here.[85] In essence, she contends that the Trial Court granted Ms. Biros a "remedy similar to the award of a monetary judgment."[86]

Ms. Snyder also denies that her claims are time-barred, citing Third Circuit precedent holding that a transfer of real property is binding to third parties, like a trustee, when recorded.[87] She also insists that the *Complaint* contains sufficient factual support for the allegation that Ms. Biros is an insider.[88] In fact, Ms. Snyder urges the Court to infer malice and fraudulent

---

[79]  Id. at 17-18.

[80]  CRS Steam, Inc. v. Eng'g Res., Inc. (In re CRS Steam, Inc.), 225 B.R. 833 (Bankr. D. Mass. 1998)

[81]  *Brief in Opposition*, Dkt. No. 29 at 18 (quoting In re CRS Steam, Inc., 225 B.R. at 845) (internal quotation marks omitted).

[82]  *Supplement in Opposition*, Dkt. No. 34 at 9.

[83]  Id. at 2 (quoting *Exhibit 10*, Dkt. No. 17-10 at 9) (emphasis added by Ms. Snyder).

[84]  Id.

[85]  Id. at 9.

[86]  Id. at 4.

[87]  Id. at 11 (citing In re MacQuown, 717 F.2d 859, 863 (3d Cir. 1983)).

[88]  *Brief in Opposition*, Dkt. No. 29 at 12-13.

12

intent from Ms. Biros' (alleged) insider status which enabled her to take possession of U Lock's only material asset.[89]

IV. **DISCUSSION**

Under Federal Rule Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.[90] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[91]  "[F]acial plausibility" means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not facts "'merely consistent with' . . . liability."[92] Legal conclusions couched as fact and threadbare recitals supported by conclusory statements must be disregarded.[93] In assessing plausibility, the court may also consider "documents attached to the complaint and matters of public record, . . . and a court may take judicial notice of a prior judicial opinion."[94] Ultimately, whether to grant a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[95]

From the start, the Court reiterates that the bulk of what has been presented are not mere allegations, but facts established by final state court orders that cannot be relitigated. And those rulings speak for themselves quite clearly, without the need for interpretation or delicate parsing. Instead, the Court's role is simply to determine whether those facts, along with any well-

---

[89] Id. at 14.

[90] See Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

[91] Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Alantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[92] Id.

[93] Id.

[94] McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted); see Tanksley v. Daniels, 902 F.3d 165, 172 (3d Cir. 2018); In re PA Co-Man, Inc., 644 B.R. at 582.

[95] Ashcroft v. Iqbal, 556 U.S. at 679.

supported allegations, state a plausible claim for relief under chapter 5 of the Bankruptcy Code. To that end, the common element of every asserted avoidance provision is a "transfer of an interest of the debtor in property."[96] Similarly, unless a transfer is avoided, there is no property to recover under section 550.[97] Accordingly, the threshold question is whether Ms. Biros received a transfer of an interest in the Property from U Lock.

Ms. Snyder speculates that the 2019 deeds transferred U Lock's interest to Ms. Biros because the 2018 deeds evidence that U Lock owned the Property. Admittedly, the state courts acknowledged the "legitimacy of the 2018 Deeds" that "show legal title in the [] Property belonging to U Lock."[98] And those deeds, unlike the original 2015 deeds, were not expressly invalidated by the Trial Court. But Ms. Snyder is glossing over a critical point: the 2019 deeds purportedly convey the Property to Ms. Biros *directly from the sellers*, not U Lock. As a practical matter, the Court questions how the 2019 deeds could transfer to Ms. Biros what the sellers had once given to U Lock in 2018. Ms. Biros would answer that the 2019 deeds declare all deeds recorded after July 16, 2015 null and void,[99] but there is no explicit order to that effect.[100] This incongruity apparently escaped the Trial Court's attention. However this wrinkle is eventually

---

[96] See 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1).

[97] 11 U.S.C. § 550.

[98] Biros v. U Lock Inc., 255 A.3d at 494 ("Appellant has not challenged the efficacy of the 2018 Deeds. Appellant cites no legal authority preventing the Estates from issuing the 2018 Deeds subject to Lis Pendens. Furthermore, the trial court accepted the legitimacy of the 2018 Deeds: "Even accounting for the void ab initio status of the [2015 Deeds], the corrective [2018 Deeds], show legal title in the [Property] belonging to U Lock, Inc. Certainly, U Lock has had full possession and control of the [Property] since July 16, 2015 [...]." Trial Court Opinion, 8/23/19, at 5.").

[99] See *Exhibit G*, Dkt. No. 23-7 at 2, 17, 30, 44.

[100] See *Exhibit 10*, Dkt. No. 17-10 at 9, ¶ 4. Ironically, if the 2019 deeds could return U Lock's interest to the sellers and then transfer it to Ms. Biros, that might support the existence of an indirect "transfer of an interest of the debtor."

smoothed, today it is enough that the 2019 deeds did not "transfer of an interest *of the debtor* in property."[101]

To be blunt, the deeds are a distraction whose importance has been overstated. It is unclear whether the 2019 deeds effectively transferred anything to Ms. Biros. And the "accepted . . . legitimacy of the 2018 Deeds"[102] merely recognizes a matter of public record: that "[e]ven accounting for the *void ab initio* status of the original [2015] deeds, the [2018 deeds] show *legal title* in the [] Property belonging to U Lock, Inc."[103] Far from the validation Ms. Snyder touts, the chain of title is a technicality that ignores the effect of the Trial Court's orders on the Property's equitable interest.

It is undisputed that the Trial Court imposed a constructive trust on the Property in favor of Ms. Biros, which the Superior Court affirmed on appeal.[104] "The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment."[105] In essence, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee."[106] The point

---

[101] 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1) (emphasis added).

[102] Biros v. U Lock Inc., 255 A.3d at 494.

[103] *Exhibit 10*, Dkt. No. 17-10 at 6 (emphasis added); see Biros v. U Lock Inc., 255 A.3d at 494.

[104] Biros v. U Lock Inc., 255 A.3d at 496.

[105] Yohe v. Yohe, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976). Under Pennsylvania jurisprudence, "[a] trust 'ex maleficio' is another expression for a constructive trust." Murphy v. Landsburg, 58 F.R.D. 165, 170 (E.D. Pa. 1973), aff'd, 490 F.2d 319 (3d Cir. 1973); see Hamberg v. Barsky, 355 Pa. 462, 465, 50 A.2d 345, 346 (1947).

[106] Biros v. U Lock Inc., 255 A.3d at 495 (quoting Beatty v. Guggenheim Expl. Co., 225 N.Y. 380, 386, 122 N.E. 378, 380-81 (1919)) (internal quotation marks omitted); see Shoemaker v. Lehigh Twp., 544 Pa. 304, 311, 676 A.2d 216, 220 (1996); Stauffer v. Stauffer, 465 Pa. 558, 568, 351 A.2d 236, 241 (1976); Buchanan v. Brentwood Fed. Sav. & Loan Ass'n, 457 Pa. 135, 152, 320 A.2d 117, 127 (1974); Pierro v. Pierro, 438 Pa. 119, 127, 264 A.2d 692, 696 (1970); Truver v. Kennedy, 425 Pa. 294, 305, 229 A.2d 468, 474 (1967); Chambers v. Chambers, 406 Pa. 50, 55, 176 A.2d 673, 675 (1962).

15

is "to restore to the plaintiff property of which he has been unjustly deprived."[107] As explained by the Superior Court, "[t]he necessity for [a constructive] trust may arise from . . . fraud, duress, undue influence or mistake,"[108] but wrongdoing is not required.[109] To the contrary, there is "no rigid standard"[110] since "[t]he controlling factor . . . is whether it is necessary to prevent unjust enrichment."[111]

It is oft repeated that "a constructive trust is bound by no unyielding formula" and that "[t]he equity of the transaction must shape the measure of relief."[112] Still, the Pennsylvania Supreme Court has recognized that "no rule is better established than that a [constructive trust] can arise *only at the inception of the title*."[113] Indeed,

> [a]lthough a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction and *the beneficiary is possessed with an equitable interest in the trust property prior to the declaration of the constructive trust*.[114]

---

[107] City of Philadelphia v. Heinel Motors, 142 Pa. Super. 493, 503, 16 A.2d 761, 766 (1940) (quoting Restatement (First) of Restitution § 160, comment (d), p.643 (1937)).

[108] Biros v. U Lock Inc., 255 A.3d at 495 (quoting Nagle v. Nagle, 799 A.2d 812, 819 (Pa. Super. 2002), appeal denied, 573 Pa. 659, 820 A.2d 162 (2003)) (internal quotation marks omitted).

[109] See City of Philadelphia v. Heinel Motors, 16 A.2d at 765 ("a constructive trust is imposed . . . to redress wrong or unjust enrichment.").

[110] Biros v. U Lock Inc., 255 A.3d at 495 (quoting Stauffer v. Stauffer, 351 A.2d at 241) (internal quotation marks omitted).

[111] Id. (quoting Nagle v. Nagle, 799 A.2d at 819) (internal quotation marks omitted); see Shepley v. Dobbin, 351 Pa. Super. 182, 188, 505 A.2d 327, 330 (1986) ("Equity will impose a constructive trust under appropriate circumstances. However, our case law is exigent in demanding evidence of unjust enrichment before a trust will be created.").

[112] Stauffer v. Stauffer, 351 A.2d at 241 (quoting Beatty v. Guggenheim Exploration Co., 122 N.E. at 380—81) (internal quotation marks omitted).

[113] Turney v. McKown, 242 Pa. 565, 568, 89 A. 797, 798 (1914) (emphasis added); see In re Pitchford, 410 B.R. at 420; In re W/B Assocs., 307 B.R. 476, 484 (Bankr. W.D. Pa. 2004), aff'd sub nom. Est. Partners, Ltd. v. Leckey, No. 2:04CV1404, 2005 WL 4659380 (W.D. Pa. Aug. 31, 2005), aff'd sub nom. In re W/B Assocs., 196 F. App'x 105 (3d Cir. 2006); In re Aultman, 223 B.R. at 483; Grubbs v. Dembec, 274 Pa. Super. 362, 370, 418 A.2d 447, 451 (1980). In fact, the Pennsylvania Supreme Court asserted that "[t]his rule is too familiar to call for any citation of authorities in support." Turney v. McKown, 89 A. at 798.

[114] Grubbs v. Dembec, 418 A.2d at 451 n.1 (1980) (typographical error corrected, citations omitted, emphasis added).

16

Retroactivity is inherently logical because the trust is triggered by the property owner "acquir[ing] title to it in some way that creates the equitable duty in favor of the [beneficiary]."[115] This duty renders them a constructive trustee whose "sole responsibility . . . is to surrender the property to the one on whose behalf the constructive trust is raised."[116] As a result, the legal title holder "has *no right whatsoever* to the property"[117] and is deemed *never* to have owned the equitable interest.[118]

As recognized by the late Judge McCullough in two published decisions, these principles make a constructive trust under Pennsylvania law innately unavoidable as a preference or fraudulent transfer.[119] Since the "debtor is deemed to have never owned the equitable interest . . . in the first place," he reasoned that "property that is the subject of a constructive trust is, as a matter of law, never legally transferred back by a debtor to the beneficiary."[120] Thus, the imposition of a constructive trust is neither a "transfer" for purposes of the Code, nor a transfer "of an interest of the debtor."[121] The Court finds this analysis unassailable.

Ms. Snyder does not dispute these concepts generally but challenges their applicability here. Positing that the Trial Court was "free to fashion an appropriate remedy under the circumstances,"[122] she seizes on the Trial Court's reference to "the **present conveyance of the Subject Property**."[123] Ms. Snyder contends that this language reveals that the conveyance to Ms.

---

[115] Shoemaker v. Lehigh Twp., 544 Pa. 304, 311, 676 A.2d 216, 220 (1996).

[116] Buchanan v. Brentwood Fed. Sav. & Loan Ass'n, 320 A.2d at 127

[117] Kern v. Kern, 2005 Pa. Super. 422, ¶ 21, 892 A.2d 1, 8 (2005).

[118] See In re Pitchford, 410 B.R. at 420 (citing In re Aultman, 223 B.R. at 485-86).

[119] Id.

[120] In re Pitchford, 410 B.R. at 420-21 (citing In re Aultman, 223 B.R. at 485-86).

[121] Id.

[122] *Supplement in Opposition*, Dkt. No. 34 at 9.

[123] Id. at 2 (quoting *Exhibit 10*, Dkt. No. 17-10 at 9) (emphasis added by Ms. Snyder).

17

Biros did not relate back, affording her a remedy akin to a money judgment.[124] Yet the Court finds this emphasized passage has been pulled from its context to advance an irrational interpretation of the Trial Court's ruling and constructive trust law as a whole.

To start, the entire passage of the Trial Court's ruling states: "the only equitable solution is the imposition of a constructive trust, *and* the present conveyance of the Subject Property to [Ms.] Biros."[125] Fundamentally, a constructive trust with prospective effect only upon the delivery of a deed is just a transfer. Even considering the Trial Court's equitable relief flexibly, the express imposition of a constructive trust requires the remedy to include some trust-like aspect. Of course, a fair reading of that passage reveals that the "present conveyance" *supplements* "the imposition of the constructive trust."[126] By operation of law, the constructive trust vested the Property's equitable interest in Ms. Biros as of the original sale transaction in July 2015. Therefore, the "present conveyance" was only necessary to transfer legal title. After all, as Ms. Snyder stresses, the 2018 deeds "show *legal title* in the Subject Property belonging to U Lock."[127] And to remove any lingering doubts, the Trial Court's order provides that "Christine Biros *is* the equitable owner of the Subject Property" and separately directs the execution of "appropriate deeds."[128]

In sum, Ms. Snyder has stated no claim for relief because neither Ms. Biros nor the Trust received a "transfer of an interest of the debtor" in the Property.[129] Despite the "legitimacy

---

[124] Id. at 2, 4, 11.

[125] *Exhibit 10*, Dkt. No. 17-10 at 7 (emphasis added).

[126] Id.

[127] Id. at 6.

[128] Id. at 9 (emphasis added).

[129] 11 U.S.C. §§ 544(b)(1), 547(b), 548(a)(1).

of the 2018 Deeds,"[130] U Lock never held an equitable interest in the Property as a result of the constructive trust. At best, U Lock might hold bare legal title to the Property in trust for Ms. Biros until the Trial Court clarifies its orders. In any event, the inability to allege an avoidable transfer is a conceptual defect in the *Complaint* that further amendment cannot correct.[131] Accordingly, dismissal with prejudice is warranted.

## V. CONCLUSION

In light of the foregoing, the Court will grant the *Motion to Dismiss* and dismiss this adversary proceeding with prejudice since further amendments would be futile. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: July 21, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[130] Biros v. U Lock Inc., 255 A.3d at 494.

[131] As was undoubtedly telegraphed throughout this *Memorandum Opinion*, the other elements of these avoidance theories rely almost entirely on threadbare assertions that lack facial plausibility. See Iqbal, 556 U.S. at 678-79. This includes: Ms. Biros' alleged insider status; Ms. Biros' alleged intent to hinder delay or defraud; that the alleged "transfer" was for less than reasonably equivalent value; and that Ms. Biros allegedly received more than she would have in a chapter 7 liquidation had U Lock owned the Property.

19